1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DARRYL W. SCHILLING,

11              Plaintiff,                    No. 2:07-cv-0902 FCD JFM (PC)

12        vs.

13    THERESA SCHWARTZ, Warden,
      et al.,
14
                Defendants.              FINDINGS & RECOMMENDATIONS
15    _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17    42 U.S.C. § 1983.  This action is proceeding on plaintiff's claims that defendants violated his

18    rights under the Eighth Amendment by acting with deliberate indifference to his serious medical

19    needs.[1]   This matter is before the court on the motion of defendants Coy, Regacho, Kofoed,

20    Bick, McAllister, and Haile for summary judgment pursuant to Fed. R. Civ. P. 56.

21        _____

22              [1]  By order filed May 23, 2007, the court determined that plaintiff's complaint stated
      cognizable claims for relief against defendants Coy, Rosalia, Regacho, Tayo-Samoni, Kofoed,
23    Shelton, Zepeda, Thomas, Murray, Bick, McAllister, Ohai, and Haile.  On June 19, 2007, the
      court directed the United States Marshal to serve process on those thirteen defendants.  Service
24    was returned unexecuted for defendants Rosalia, Tayo-Samoni, and Ohai, and these three
      defendants were ultimately dismissed pursuant to Fed. R. Civ. P. 4(m).  See Findings and
25    Recommendations filed November 29, 2007; Order filed January 8, 2008.  The other ten
      defendants answered the complaint on September 24, 2007.  The instant motion is brought by six
26    of the ten defendants who remain in this action.

                                                      1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6  1436 (9th Cir. 1987).

7         In the endeavor to establish the existence of a factual dispute, the opposing party

8  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

On June 19, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I.  Facts[2]

At all times relevant to this action, plaintiff was an inmate housed at California Medical Facility (CMF) in Vacaville, California.  On September 15, 2005, plaintiff was seen by, defendant Nurse Coy and Nurse Practitioner Tayo-Samoni in the hospital clinic for complaints of a foot injury.  Plaintiff told defendant Coy he had slipped and fallen off his bunk bed ladder.  X-rays showed that plaintiff had broken the fifth metatarsal bone in his left foot.  Plaintiff 's housing status was discussed and he was told he would need to be moved into a lower bunk.  The parties dispute whether defendant Coy was involved in any discussions of plaintiff's housing status.  Plaintiff was discharged with pain medication, crutches and a referral to podiatry.   In addition, plaintiff was instructed not to bear weight on his left foot.

On September 18, 2005, plaintiff slipped and fell outside his cell.  He was taken to the prison clinic and evaluated by defendant Dr. Haile and Nurse Rosalia.  Plaintiff was told to elevate his foot and not to bear weight on his left foot.

On September 21, 2005, plaintiff fell again.  He was seen in the clinic by defendant Nurse Regacho and defendant Dr. McAllister.  Plaintiff spoke with defendant McAllister about being transferred to a lower bunk.  Defendant McAllister told plaintiff that bed placement decisions were made by custody staff, not by medical staff.

On September 26, 2005, plaintiff saw defendant Dr. Kofoed for an orthopedic consultation.  Defendant Kofoed told plaintiff he expected plaintiff's foot would heal over time.

---

[2]  Except as otherwise noted, the following facts are undisputed.

4

1    Plaintiff spoke with defendant Kofoed about needing reassignment to a lower bunk.  Defendant

2    Kofoed told plaintiff to speak with his primary care physician because defendant Kofoed was a

3    contract employee with no authority over housing decisions.

4              On or about October 5, 2005, a chrono concerning plaintiff was issued.  The

5    chrono provides:

6              The patient was seen in the clinic.  He had a left foot fracture of the
             fifth metatarsal bone on September 15, 2005.  He was seen by an
7              orthopedist.  He needs to be housed in a lower bunk and be
             provided with an elevator pass and crutches for a period of six
8              weeks (through November 15, 2005), pending reevaluation at the
             end of that time.
9

10   Ex. A to Plaintiff's Opposition to Defendants' Summary Judgment Motion, filed June 4, 2008.

11   The chrono was signed defendant Bick and Dr. Usha Pai.  On October 5, 2005, while climbing

12   up to his upper bunk, plaintiff fell and broke his ankle.

13   II.  Analysis

14        A.  Standards for Plaintiff's Eighth Amendment Claim

15             In order to prevail on his Eighth Amendment claim, plaintiff must prove that he

16   had a "serious medical need" and that defendants acted with "deliberate indifference" to that

17   need.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is serious if "the failure to

18   treat a prisoner's condition could result in further significant injury or the 'unnecessary and

19   wanton infliction of pain'."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting

20   Estelle, 429 U.S. at 104, 97 S.Ct. 285).  Deliberate indifference is proved by evidence that a

21   prison official "knows of and disregards an excessive risk to inmate health or safety; the official

22   must both be aware of the facts from which the inference could be drawn that a substantial risk of

23   serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 825, 837

24   (1994).  Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos, 152

25   F.3d 1124, 1128 (9th Cir. 1998).  "Prison officials are deliberately indifferent to a prisoner's

26   serious medical needs when they deny, delay, or intentionally interfere with medical treatment."

Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

      B. <u>Defendants' Motion for Summary Judgment</u>

          Plaintiff's Eighth Amendment claim against the defendants in this action is predicated on the fact that he was not transferred to a lower bunk until sometime after he fractured his ankle on October 5, 2005. Defendants seek summary judgment on the grounds that (1) the failure to transfer plaintiff to a lower bunk did not result in a "sufficiently serious" deprivation for purposes of the Eighth Amendment and (2) there is no evidence that any of the moving defendants acted with deliberate indifference to a known risk of harm to plaintiff. Defendants Coy and Regacho argue that neither of them were aware that plaintiff "had a desire" to be moved to a lower bunk and that there is no evidence that either of them "knowingly acted in a manner posing a substantial risk of severe injury" to plaintiff. Defendants' Motion for Summary Judgment, filed April 16, 2008, at 9. Defendants Haile, McAllister, and Kofoed argue that the undisputed facts do not support a finding that they were deliberately indifferent to plaintiff's serious medical needs in connection with the failure to transfer plaintiff to a lower bunk following the injuries to his left foot.

          The undisputed evidence of record shows that on September 15, 2005 plaintiff saw defendant Coy and Nurse Practitioner Tayo-Samoni following the fracture of his fifth metatarsal bone in his left foot. On September 18, 2005, plaintiff saw defendant Haile and Nurse Rosalia after he slipped and fell outside his cell. At both visits, plaintiff was advised to refrain from any weight bearing on his left foot. On September 21, 2005, plaintiff fell again, and was seen by defendants Regacho and McAllister. On September 26, 2005, plaintiff saw defendant Kofoed for an orthopedic consultation. At that visit, Dr. Kofoed prescribed an open shoe and a wheelchair. On October 5, 2005, a CDC 128-C chrono was signed by Dr. Usha Pai and defendant Dr. Bick. The chrono referred only to plaintiff's foot fracture and stated, <u>inter alia</u>, that plaintiff "needs to be housed in a lower bunk." Ex. A to Plaintiff's Opposition to

1    Defendants' Summary Judgment Motion, filed June 4, 2008.  On October 5, 2005, plaintiff fell

2    while climbing to his upper bunk and broke his ankle.

3          It is undisputed that defendants Haile and McAllister knew that plaintiff was

4    housed in an upper bunk at the time each of them saw plaintiff for his foot injury.  There are

5    disputed issues of fact over whether plaintiff discussed his housing status with defendants Coy or

6    Haile and whether either or both of those defendants knew plaintiff was housed in an upper bunk.

7    There are also disputed issues of fact as to whether plaintiff requested reassignment to a lower

8    bunk from any of the defendants.

9          As noted above, it also undisputed that at the visits on September 15, 2005 and

10   September 18, 2005, plaintiff was advised to refrain from bearing weight on his left foot.

11   Defendant Kofoed has submitted a declaration in support of the motion for summary judgment

12   which he avers that by the time defendant Kofoed saw plaintiff on September 26, 2005, plaintiff

13   "would have been able to sustain minimal weight bearing on the heel of his injured foot and

14   increase weight bearing as tolerated and as his injury healed" and that "negotiating his bunk bed

15   ladder did not expose [plaintiff] to an excessive risk of substantial harm . . . because [plaintiff]

16   would have been expected to be able to bear some weight on his left foot" as of September 26,

17   2005.  Ex. K to Defendants' Motion for Summary Judgment, Declaration of Kofoed, filed April

18   16, 2008, at ¶ 8.  At the same visit, however, defendant Kofoed prescribed a wheelchair for

19   plaintiff.  Ex. I to Defendants' Motion for Summary Judgment.  In addition, sometime between

20   September 26, 2005 and October 5, 2005, other medical staff at the prison decided to issue a

21   chrono requesting a lower bunk for plaintiff.  Although the chrono was issued on the same day

22   plaintiff broke his ankle, the language of the chrono gives rise to an inference that it was issued

23   prior to plaintiff's ankle fracture because it refers only to his foot fracture and not to the broken

24   ankle.

25         All of the foregoing give rise to triable issues of material fact that preclude

26   summary judgment for defendants Coy, Haile, McAllister and Kofoed on plaintiff's Eighth

1    Amendment claim.  In particular, there are triable issues as to whether these defendants knew

2    plaintiff was housed in an upper bunk and whether they knew or disregarded the possibility that

3    plaintiff's foot fracture and the accompanying limitation on his ability to bear weight on that foot

4    created an excessive risk to plaintiff's safety as long as plaintiff was required to climb a ladder to

5    get into an upper bunk.  These issues should be resolved by a jury.

6            It is undisputed that plaintiff did not discuss his housing status with defendant

7    Regacho, and there is no evidence that defendant Regacho knew plaintiff was housed in an upper

8    bunk.  For that reason, defendant Regacho is entitled to summary judgment.

9            Defendant Bick seeks summary judgment on the ground that he has been included

10   in this lawsuit solely based on his role as Chief Medical Officer at California Medical Facility

11   and not due to any personal involvement in the events complained of.[3]  Plaintiff has not opposed

12   this part of defendants' motion for summary judgment.  The court will recommend that

13   defendants' motion for summary judgment be granted as to defendant Bick.

14           Defendants also contend that they are entitled to qualified immunity from liability

15   on plaintiff's Eighth Amendment claim.  In considering the defense of qualified immunity, the

16   makes two distinct inquiries, the "constitutional inquiry" and the "qualified immunity inquiry."

17   See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir.2002).  The "constitutional

18   inquiry" asks whether "the facts alleged show the officer's conduct violated a constitutional

19   right" when "[t]aken in the light most favorable to the party asserting the injury."  Saucier v.

20   Katz, 533 U.S. 194, 201 (2001).[4]  If this question is satisfied, then the court turns to the

21

22       [3]  As noted in section I, supra, the undisputed facts show that on or about October 5,
     2005, the day that plaintiff fractured his ankle, defendant Bick and another physician, Dr. Pai,
23   signed a chrono stating that plaintiff required a lower bunk.  There is no other evidence of
     defendant Bick's personal involvement in the events complained of.

24       [4]  The United States Supreme Court has recently held that "the Saucier [two-step]
25   procedure should not be regarded as an inflexible requirement" for courts analyzing a qualified
     immunity defense raised in a § 1983 action.  Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 813
26   (Jan. 21, 2009).  The Pearson decision authorizes lower courts to "exercise their sound discretion
     in deciding which of the two prongs of the qualified immunity analysis should be addressed first

1   "qualified immunity inquiry," and asks if the right was clearly established. Id. at 201-2. While

2   Saucier considered qualified immunity in the context of the Fourth Amendment, its analysis also

3   applies in the Eighth Amendment context. Estate of Ford, 301 F.3d at 1050.

4         The disputes of material fact that preclude summary judgment for defendants Coy,

5   Haile, McAllister and Kofoed on plaintiff's Eighth Amendment claim also preclude summary

6   judgment for these defendants on their claim of qualified immunity. Viewed in the light most

7   favorable to plaintiff, the facts alleged could establish a violation of plaintiff's Eighth

8   Amendment right to protection from deliberate indifference to his serious medical needs, and to

9   his safety, rights that were clearly established prior to the events at bar.

10         For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

11         1. Defendants' April 16, 2008 motion for summary judgment be granted in part

12   and denied in part;

13         2. Summary judgment be granted for defendants Regacho and Bick;

14         3. Summary judgment be denied for defendants Coy, Haile, McAllister and

15   Kofoed ; and

16         4. This matter be referred back to the undersigned for further pretrial proceedings.

17         These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

19   days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties. Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

22   /////

23   /////

24   /////

25   _____

26   in light of the circumstances in the particular case at hand" but it does not require abandonment
of the Saucier procedure. Id. at 818.

1   failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: February 19, 2009.

4

5                                                        UNITED STATES MAGISTRATE JUDGE

6

7   12

8   schi0902.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26